IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RADIO MUSIC LICENSE COMMITTEE, INC., <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL MUSIC RIGHTS, LLC, <br><br> Defendant. | Civil Action No. 16-6076 <br><br> Judge: Hon. C. Darnell Jones II |

**DECLARATION OF RANDY GRIMMETT IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR TO TRANSFER VENUE**

I, Randy Grimmett, declare as follows:

1.   I am the Chief Executive Officer and a co-founder of Global Music Rights, LLC ("GMR").

2.   I have served as the Chief Executive Officer of GMR since its inception in 2013. I have extensive personal knowledge regarding GMR and a detailed understanding of its business model. This includes, among other things, knowledge regarding the manner in which GMR seeks to license musical compositions for public performance to terrestrial radio stations and other media service providers, and GMR's efforts to attract and retain songwriters and music publishers. I personally participated in GMR's communications with the Radio Music License Committee ("RMLC").

**I.   General Background**

3.   GMR is a limited liability company organized under the laws of Delaware. GMR's headquarters and sole office is in Los Angeles, CA. GMR was founded in 2013, and today employs a total of seventeen full-time employees. Fifteen of those employees work out of GMR's office in Los Angeles. The remaining two work remotely from their homes in New Jersey. No GMR employee resides or works in Pennsylvania.

4.  GMR is owned by [1] Azoff MSG Entertainment LLC, a Delaware limited liability company whose sole place of business is in Los Angeles, CA, [2] me, a resident of Los Angeles, and [3] a few of GMR's founding songwriters, none of whom has a primary residence in Pennsylvania.  The founding songwriters' shares are non-voting.

5.  GMR represents a small number of owners of musical copyrights in the licensing of their public performance rights.  GMR's repertory encompasses roughly 25,000 compositions written by 73 songwriters, which I understand to be approximately 0.005% of total composers represented by a performing rights organization (a "PRO") in the United States and 0.12% of total compositions represented by a PRO in the United States.

6.  Virtually all GMR documents are stored either physically or digitally on servers in its office in Los Angeles, CA.  Limited data is stored remotely using Salesforce, which is headquartered in San Francisco, CA.  In addition, numerous writers who are clients of GMR, as well as key publishing companies and individuals with expertise on the music industry, reside in California.

7.  Prior to the initiation of this lawsuit, GMR had directly licensed only one terrestrial radio broadcaster—iHeartMedia, Inc.—to publicly perform GMR's compositions.  Based on my discussions with iHeart and publicly-available information, my understanding is that it is not a Pennsylvania-based company.  Since the initiation of this lawsuit, GMR has entered into direct license agreements with additional RMLC member stations.

8.  RMLC is a corporation based in Nashville, TN that represents the interests of approximately 10,000 commercial radio stations.  The owners of these stations—also known as "RMLC members"—represent over 90% of the billions of dollars of annual revenue generated by the terrestrial radio industry in the United States.  It is my understanding there are 477 RMLC member stations in California, but only 220 member stations in Pennsylvania.

9.  RMLC describes itself on its website and otherwise as negotiating with the PROs to obtain licenses to the performing rights in musical copyrights.  On behalf of its members, RMLC has negotiated license agreements with the two largest PROs, The American Society of

Composers, Authors and Publishers ("ASCAP") and Broadcast Music, Inc. ("BMI"). Also on behalf of its members, RMLC sued a third PRO, SESAC, and subsequently settled that lawsuit.

## II. GMR's Negotiations with RMLC

10. In 2014, soon after its founding, GMR approached RMLC to make RMLC aware of GMR's entrance into the marketplace. Over the next year, representatives of GMR—principally myself and one or two other Los Angeles-based employees—met with representatives of RMLC to discuss GMR and its repertory.

11. The discussions took place in-person in various cities:

- On June 4, 2014, I met with William Velez, executive director of RMLC, in Washington, D.C.
- On October 8, 2014, I met with Mr. Velez, Ed Christian, the Chairman of RMLC, and John VerStandig, the Vice Chairman of RMLC, at the New York City offices of RMLC's attorneys, Weil, Gotshal & Manges LLP.
- On August 24, 2015, my colleague Susan Genco and I met with Messrs. Christian and Velez, in Detroit, MI.
- On September 23, 2015, October 21, 2015, and February 26, 2016, I met with Mr. Velez in Nashville, TN.
- On March 19, 2016, it is my understanding that Ms. Genco met with Kenneth Steinthal, RMLC's attorney at the time, in Austin, TX. I joined this meeting by phone from my office in Los Angeles, CA.
- On July 15, 2016, Ms. Genco and I met with Mr. Steinthal in Los Angeles, CA.
- On September 15, 2016, my colleague Sean O'Malley, Ms. Genco, and I met with Mr. Steinthal in New York City, NY.
- On October 4, 2016 I met with Mr. Velez in Nashville, TN.
- On October 26, 2016, Ms. Genco, another colleague, Frank Huang, and I met with Mr. VerStandig, Mr. Steinthal and Joseph Wetzel, another attorney representing RMLC, and Susanna Lowy, a representative for CBS Radio, at the GMR office in

Los Angeles, CA. This was the only meeting where proposals were exchanged and the final in-person meeting before RMLC filed suit against GMR.

No meetings occurred in Pennsylvania.

12. To my knowledge, Eugene Levin, the treasurer of RMLC who is based in Pennsylvania, only participated in one meeting throughout the entirety of GMR's discussions with RMLC. He and Mr. VerStandig dialed into the August 24, 2015 meeting in Detroit, MI via phone.

13. RMLC initially informed GMR that it would not agree to any license deal that did not include certain terms, such as a compulsory license and rate setting arbitration. Because these terms are not acceptable to GMR, GMR attempted to negotiate directly with several of RMLC's member stations. As noted, prior to this litigation GMR has entered into a license agreement with iHeartMedia, Inc., a Delaware corporation with headquarters in San Antonio, TX. None of the negotiations for that agreement took place in Pennsylvania.

14. Prior to the initiation of this litigation, GMR had not entered into a direct license with any members of RMLC who have headquarters or substantial business centers in Pennsylvania.

15. On November 18, 2016, just before Thanksgiving, RMLC filed the instant Complaint against GMR along with a 200-page Motion for Preliminary Injunction. RMLC personally served GMR's agents in California and Delaware with papers on November 30, 2016.

16. On November 30, 2016, GMR proposed an interim license with RMLC whereby GMR would license its repertory to RMLC's member stations on a temporary basis, while the parties continued to negotiate. On December 2, 2016, RMLC rejected this offer.

17. During a hearing in this matter before Magistrate Judge Sitarski on December 8, 2016, Judge Sitarski encouraged the parties to reengage in efforts to reach an interim license agreement.

18. The parties negotiated the terms of such an interim license, and on December 19, 2016, agreed on terms that GMR would offer to RMLC's members. The terms of this interim license are substantially similar to GMR's November 30, 2016 interim offer.

19. A handful of RMLC member stations have accepted GMR's interim license offer, and discussions with stations about the interim license are ongoing.

### III.  GMR's Alleged Directed Communications into Pennsylvania

20. Before the RMLC sued GMR, GMR had not directed any communications into Pennsylvania promoting or otherwise offering its licenses for sale to Pennsylvania radio stations. GMR has since communicated the terms of its interim license offer to RMLC member stations, including some in Pennsylvania, via email on January 7, 2017. GMR has not directed communications into Pennsylvania informing radio stations of the risk of infringing works in its repertory or otherwise implicitly threatening suit for infringement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on the 20th day of January, 2017, in Los Angeles, CA.

Dated: January 20, 2017

By: _____
Randy Grimmett